UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAMONT SHEPARD, | Case No. 1:18-cv-00277-DAD-HBK |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS TO DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| M. BORUM, J. ACEBEDO, | (Doc. No. 65) |
| Defendants. | FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| | (Doc. No. 66) |
| | FOURTEEN-DAY OBJECTION PERIOD |

This matter was reassigned to the undersigned on November 17, 2020. (Doc. No. 75). amended complaint. (Doc. No. 13). Pending before the Court is Defendants' motion for summary judgment filed on June 5, 2020. (Doc. No. 65). Plaintiff filed an opposition on June 14, 2020. (Doc. No. 67). And Defendants filed a reply on July 1, 2020. (Doc. No. 68). Separately, Plaintiff filed a second merits-based motion for summary judgment on June 9, 2020, which, over objection by Defendants, the Court accepted. (Doc. Nos. 66, 69, 77). Defendants incorporated arguments in opposition to Plaintiff's motion for summary judgment in their objections. (Doc. No. 69). The undersigned recommends that both Defendants' and Plaintiff's motions for summary judgment be denied because material facts remain in dispute.

1

# I. BACKGROUND

## A. Procedural Posture

Plaintiff Lamont Shepard ("Plaintiff" or "Shepard"), a state prisoner proceeding *pro se*, initiated this action by filing a civil rights complaint under 42 U.S.C. § 1983 on February 26, 2018. (Doc. No. 1). Shepard paid the filing fee on March 21, 2018. (*See* docket). On October 10, 2018, the then-assigned magistrate screened Shepard's complaint and found it failed to state a cognizable claim against any defendant and permitted Shepard to file an amended complaint. (Doc. No. 12 at 7). On October 22, 2018, Shepard filed his first amended complaint. (Doc. No. 13, "FAC"). The then-assigned magistrate judge screened the FAC and found it stated cognizable First Amendment retaliation claims against Defendants Borum and Acebedo, two correctional counselors at Kern Valley State Prison. (Doc. No. 14). On March 4, 2019, Defendants filed an answer to the FAC. (Doc. No. 19).[1] Thereafter, before discovery, Plaintiff filed a motion for summary judgment[2] on May 23, 2019 (Doc. No. 29), and Defendants filed an exhaustion-based motion for summary judgment on July 8, 2019. (Doc. No. 32). The Court denied both earlier motions for summary judgment. (See Doc. Nos. 49, 56 and 53, 64). The case proceeded to discovery. Pending are the parties' respective merits-based motions for summary judgment. (Doc. Nos. 65, 66).

## B. Facts Alleged in Support of First Amendment Claims Set Forth in FAC

According to the FAC, Shepard was summoned to the counselor's office at Kern Valley State Prison on or about May 24, 2016.[3] (Doc. No. 13 at 2). While in the office, Defendant Borum told Shepard he was being placed on "c-status" because he is a "legal beagle." (*Id.*). Shepard describes a "legal beagle" as an inmate who files prison grievances and civil rights lawsuits against prison staff. (*Id.*). Shepard further states Borum told him "You're a legal beagle

---

[1] Plaintiff filed a second amended complaint after Defendants' filed their answer. (Doc. No. 21). Plaintiff did not seek leave of Court to file a second amended complaint. *See* Fed. R. Civ. P. 15(a)(2). Thus, the Court struck the procedurally improper pleading. (Doc. No. 79). The FAC is the operative complaint.
[2] Although Plaintiff titled his motion for summary judgment, in part, as a motion addressing exhaustion, Plaintiff also addressed the merits of his case. (*See generally* Doc. No. 29).
[3] Originally Plaintiff stated that this incident occurred on May 26, 2016 but subsequently he corrected the date to May 24, 2016 as his grievance reflects.

2

so I'm sure you're not going to waive your 72 hours and I'm not going to be here on May 27, 2016, so someone else will be there in my place." (*Id*.). When Shepard told Borum that her statement was retaliatory, Borum responded, "I know, so I'm going to take you under program review." (*Id*.). Shepard then submitted a prison grievance against Borum. (*Id*.).

After filing the grievance, Borum summoned Shepard back to the office and told him she was contacted by appeals about the grievance. Borum called Shepard a liar and requested him to "change the complaint and/or withdraw it." (*Id*.). Borum explained she had rightfully placed him on c-status because he had three rules violation reports ("RVRs"). (*Id*.). Shepard disputed that he had three RVRs contending that one of the RVRs under consideration, log no. FA-15-08-077R, was reissued and reheard from its original issue date of August 31, 2015; and, thus was outside the required six-month period for placement on c-status. (*Id*. at 3). Borum replied that Shepard was being placed on c-status for having three RVRs and for being a legal beagle. (*Id*.).

On June 1, 2016, Shepard was placed on c-status due to his participation in a riot (log no. 9931) and possession of a cell phone (log no. FA-15-08-077R). (*Id*.). As a result, Shepard's personal property and legal materials were taken away. (*Id*.). On September 22, 2016, a chrono was issued which stated Shepard was placed on c-status in error because one of the cited RVRs was outside the six-month review period. (*Id*).

Shepard claims Acebedo, as Borum's supervisor, should have corrected Borum's actions, but instead was complicit in Borum's actions. (*Id*.). Shepard states Acebedo told him that "Retaliation is a far cry from where I would have taken it, however I'm go go [sic] with my co-worker, punishing plaintiff for 151 day of status." (*Id*.). Shepard then alleges that Acebedo said, "You need more than just c/c status if you know what I mean." (*Id*.). Shepard took this to mean that correctional officers should beat and/or kill him. (*Id*.). Shepard alleges that Acebedo knew that Borum's decision to place him on c-status was improper, but he approved it, nonetheless. (*Id*.).

///

///

## II. APPLICABLE LAW

**A. Summary Judgment Standard**

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Id.* at 323. An issue of material fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there to be a genuine issue of a material fact. *See* Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587. The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The court must apply standards consistent with Rule 56 to determine whether the

moving party demonstrated there is no genuine issue of material fact and showed judgment to be appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 772 (9th Cir. 2002).

## B. First Amendment Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)). To prevail on a First Amendment retaliation claim, the plaintiff must demonstrate that: (1) his speech or conduct was protected; (2) a state actor took adverse action against him; (3) the protected conduct was a "substantial" or "motivating" factor behind the adverse action; (4) the adverse action would chill a person of ordinary firmness from exercising their First Amendment rights in the future; and (5) the action otherwise did not reasonably advance a legitimate correctional goal. *See Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

While a prisoner must allege that a defendant's actions caused him some injury to establish a claim, *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000), the prisoner need not demonstrate a total abandonment of his First Amendment rights. *See Rhodes*, 408 F.3d at 568-69 (rejecting argument that inmate failed to make a claim for relief because he was able to file inmate grievances and a lawsuit). It is enough that a prisoner's First Amendment rights were chilled. *Id.* at 569 (holding that destruction of an inmate's property and assaults on the inmate were enough to chill the inmate's First Amendment rights and state a retaliation claim, even if the inmate filed grievances and a lawsuit); *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999) (["I]t would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity.").

5

## IV. RECORD BEFORE THE COURT

### A. Evidence Submitted by the Parties

In support of their motion for summary judgment, Defendants submit the following: declarations of Acebedo (Doc. No. 65-4 at 1-4) and Borum (Doc. No. 65-5 at 1-4); a portion of the CDCR operations manual (Doc. No. 65-4 at 6-10); and Shepard's rule violation reports, disciplinary hearing reports and the June 1, 2016 classification committee chrono. (Doc. No. 65-4 at 12-67). As exhibits to his motion for summary judgment, Shepard submits: his own declarations (Doc. No. 66 at 25-28, 51-52); his inmate appeal forms and review responses (*id*. at 33-42, 47-50); the June 1, 2016 and September 22, 2016 classification committee chronos (*id*. at 43, 46); cell search receipt (*id*. at 44); and inmate request for interview form (*id*. at 45). Additionally, in his opposition to Defendants' motion for summary judgment, Shepard also submits: Shepard's rule violation reports (Doc. No. 67 at 26-82); Defendants' interrogatory and admissions responses (*id*. at 83-125); a November 16, 2015 classification committee chrono (*id*. at 126); and a CDCR code of silence memorandum (*id*. at 129).

### B. Statement of Undisputed Facts

The following facts are undisputed unless otherwise noted.

#### 1. Placement on C-Status

The "C-status" classification is a designation for an inmate "who refuses to accept or perform in work/training assignment, or who is deemed a program failure as defined in CCR § 3000 and who is placed on non-credit earning status by a classification committee." (Doc. No. 65-4 at 8). "Inmates in Privilege Group C cannot have family visits and have restrictions placed on their canteen draws, non-emergency telephone calls, yard access, personal property packages, and special canteen purchases." (Doc. No. 65-5 at 2). Under California Code of Regulations, Title 15, Sections 3000 and 3044, an inmate must be placed on Work Group/Privilege Group C/C ("C Status") if he or she generates a significant disciplinary history within 180 days. Cal. Code Regs. Tit. 15, §§ 3000, 3044(b)(4), 3044(f); (Doc. No. 65-3 at 2). Under California Code of Regulation, Title 15, Sections 3000, reasonable evidence of a significant disciplinary history includes, but is not limited to, guilty findings for two or more serious Rules Violation Reports

(RVR), or for one serious RVR and two administrative RVRs, within the 180-day period preceding the committee classification hearing. Cal. Code Regs. Tit. 15, § 3000; (Doc. No. 65-3 at 2-3).

### 2. May 24, 2016 Encounter

On May 24, 2016, Shepard states he was summoned to the counselor's office at Kern Valley State Prison ("KVSP"). (Doc. No. 66 at 6). It does not appear that Borum disputes that the May 24, 2016 meeting occurred but only disputes calling Shepard a "legal beagle" during the meeting. (Doc. No. 66-5, ¶ 8). It is undisputed that on the same day, Shepard filed a grievance for retaliation that he subsequently appealed to the third level of review. (Doc. No. 66 at 33-42, 47-50). Shepard claimed in his grievance that Borum told him he was being punished for being a legal beagle and that was the reason she was placing him on c-status. (*Id.*). Borum does expressly dispute and states in her declaration that:

> "[t]o the best of my knowledge and recollection, I never told Plaintiff Lamont Shepard (K-29682) on May 24, 2016, that I would place him on C Status for being a "legal beagle." I have never used the term "legal beagle" during any of my conversations or interactions with Plaintiff at any point in time. Plaintiff also never indicated to me on May 24, 2016, that he believed I was retaliating against him by placing him on C Status."

(Doc. No. 65-5, ¶ 8).

### 3. Shepard's Rule Violation Reports (RVRs)

- On August 31, 2015, Shepard was charged with possession of a cell phone, a serious offense (log no. FA-15-08-077R). (Doc. No. 65-4 at 53). On December 24, 2015, the RVR regarding the cellphone was ordered reissued and reheard because of a finding of a due process violation during the initial hearing. (*Id.* at 53, 55). On January 27, 2016, Shepard was found guilty on the reissued cell phone RVR. (*Id.* at 55).
- On March 29, 2016, Shepard was charged with an RVR for participating in a riot (log no. 9931). (*Id.* at 12). On May 4, 2016, Shepard was found guilty of participating in a riot, a serious offense. (*Id.* at 14).

- On April 21, 2016, Shepard was charged with an RVR for refusing a housing assignment (log no. 17807). (*Id*. at 27). On May 30, 2016, Shepard was found guilty for refusing a housing assignment, a serious offense. (*Id*. at 33).
- On April 25, 2016, Shepard was charged with an RVR for battery on a prisoner, a serious offense (log no. 19829). (*Id*. at 38). On June 1, 2016 at 11:07 a.m., Shepard was found guilty of battery on a prisoner. (*Id*. at 39).

### 4. Classification Committee Meetings

On June 1, 2016, six days <u>after</u> Shepard filed his grievance against Borum, a Unit Classification Committee ("UCC") met to determine whether Shepard's classification should be changed. (Doc. No. 65-4 at 67). Both Borum and Acebedo participated in the UCC meeting. (*Id*). The committee found Shepard had committed three serious RVRs in the previous six months and placed him on c-status. The chrono, however, lists only two RVRs: (1) participation in a riot; and (2) possession of a cell phone. (*Id*.). The parties dispute whether Shepard's RVR history qualified him for c-status for 151 days.[4] (Doc. No. 65-3 at 3). Defendants submit Shepard qualified for c-status because "he had received three serious RVRs and had been found guilty of at least two of those RVRs, within 180 days prior to the June 1, 2016 classification committee hearing." (*Id*.). Defendants and Shepard dispute whether Defendants knew at the time of the June 1, 2016 classification hearing that Shepard had filed the May 24, 2016 grievance or his other grievance filing history. (Doc. No. 65-3 at 3).

Borum in her declaration states:

> "At the time of the hearing, I was not aware of Plaintiff's litigation history or grievance-filing history, and I did not take Plaintiff's litigation history or grievance-filing history into account before or during the committee's deliberations. I never used the words 'legal beagle' during the June 1, 2016 committee hearing or during any conversation with the other committee members. I never indicated to any other committee member that they should place Plaintiff on C Status because he was a 'legal beagle.' I never indicated to any other committee member that they should take Plaintiff's litigation

---

[4] As explained *infra*, Defendants admit that the RVRs relied upon and listed in the classification committee chrono to place Shepard on c-status were insufficient for c-status. However, Defendants contend Shepard's other RVRs, despite not being listed in the classification committee chrono, qualified him for c-status. (Doc. No. 65-2 at 4).

8

> history or grievance-filing history into account before or during the committee's deliberations."

(Doc. No. 65-5, ¶ 10).

Acebedo in his declaration similarly states:

> To the best of my knowledge and recollection about the June 1, 2016 committee hearing, I only agreed to place Plaintiff on C Status because I believed he qualified as a program failure based on his disciplinary record within the last 180 days of the committee hearing. I did not elect to place Plaintiff on C Status because he was a "legal beagle." At the time of the hearing, I was not aware of Plaintiff's litigation history or grievance-filing history, and I did not take Plaintiff's litigation history or grievance-filing history into account before or during the committee's deliberations. I never indicated to any other committee member that they should take Plaintiff's litigation history or grievance-filing history into account before or during the committee's deliberations. I never used the words "legal beagle" during the June 1, 2016 committee hearing or during any conversation with the other committee members. Defendant M. Borum also never indicated to me before or during the committee hearing that I should place Plaintiff on C status because he was a "legal beagle." I also never stated to Plaintiff that "Retaliation is a far cry from where I would have went with it." I also never stated to Plaintiff that "You need more than just a C/C status, if you know what I mean. I also never threatened to have Plaintiff beaten or killed by other correctional officers. Plaintiff never indicated to me before or during the June 1, 2016 committee hearing that Defendant Borum was retaliating against him, or that he considered the C status classification to be a form of retaliation. I also never told Plaintiff at any point in time after June 1, 2016, that I had placed him on C Status because he was a "legal beagle."

(Doc. No. 65-4, ¶ 10).

After the June 1, 2016 UCC hearing, Shepard was placed on c-status and remained on c-status for several months. On September 22, 2016, another UCC hearing was held. (Doc. No. 67 at 91). At that hearing, it was found that Shepard was placed on c-status in error because his record at the time of the June 1, 2016 hearing was insufficient to qualify him for c-status. (*Id.*) Accordingly, his c-status placement was revoked. (*Id.*). The parties dispute whether Shepard was placed on c-status in retaliation for filing inmate grievances, or because Defendants sincerely believed Shepard's RVR history qualified him for c-status. (Doc. No. 68 at 2). Defendants admit that the "written decision (committee classification chrono) misidentified the RVRs that qualified Plaintiff for C Status, and they erroneously placed Plaintiff on C Status based on his cell-phone RVR." (*Id.* at 4).

9

### III. ANALYSIS

#### A. Plaintiff's Motion for Summary Judgment

Shepard moves for summary judgment on the ground that Defendants placed him on c-status as retaliation for filing prison grievances and a civil rights lawsuit against Defendants. In support, Shepard reiterates as alleged in his FAC that Defendants placed him on c-status for being a "legal beagle." (Doc. No. 66 at 4). Shepard argues Borum knew that his disciplinary record did not support a c-status placement. (*Id*. at 6). He similarly argues that Acebedo knew Borum was improperly placing him on c-status and was complicit in this action. (*Id*. at 7). In support of his motion, Shepard cites to Defendants' answers to his discovery requests. Specifically, Shepard points to Defendants' interrogatory answers in which they admit that Shepard was classified to c-status in error and that the cell phone incident RVR occurred outside the 180-day review period. (*See, e.g., id*. at 8).

In opposition, Defendants argue that Shepard's motion for summary judgment should be denied because Shepard fails to show there are "no genuine disputes of material fact regarding whether Counselors Acebedo and Borum retaliated against him." (Doc. No. 69 at 7). Specifically, Defendants point out that the parties dispute what was said at the May 24, 2016 meeting and at the June 1, 2016 classification hearing, and the parties dispute whether Counselors Acebedo and Borum placed Plaintiff on c-status because of his protected conduct or to advance a legitimate correctional goal. (*Id*. at 6).

#### B. Defendants' Motion for Summary Judgment

Defendants move for summary judgment on the ground that Shepard's placement on c-status, although in error, was done because they sincerely believed Shepard's disciplinary record qualified him for c-status and for no other reason. Defendants submit Shepard cannot prevail on his First Amendment retaliation claim. First, Defendants argue that Borum and Acebedo's actions reasonably advanced a legitimate correctional goal of preserving institutional safety and order when they placed Shepard on c-status. (Doc. No. 65-2 at 1, Doc. No. 68 at 5). Defendants point to Shepard's extensive disciplinary record when they reclassified him to c-status arguing that his disciplinary record qualified him for such status. (Doc. No. 65-2 at 1-2). Defendants

10

admit that their "written decision misidentified the RVRs that qualified Plaintiff for C Status." (*Id*. at 7). Nonetheless, Defendants argue that they "still properly placed Plaintiff on C Status because his disciplinary record supported the classification." (*Id*.). In particular, Defendants point to Shepard's three RVRs issued in the 180 days prior to the classification committee hearing as proof that Shepard was qualified for c-status. (*Id*.).

Second, Defendants argue that Shepard cannot show that his protected activity of filing grievances was the "substantial motivating factor" behind Defendants' decision to place Shepard on c-status. (*Id*.); *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009). Defendants state that they placed Shepard on c-status solely due to his disciplinary record. (Doc. No. 65-2 at 7). Defendants state that they were not aware of Shepard's grievance and litigation history at the time of the classification hearing; and, therefore they did not take this into account in making their classification decision. (*Id*. at 7-8). Defendants also deny ever telling Shepard he was being placed on c-status for being a legal beagle. (*Id*. at 8).

In the alternative, Defendants argue they are entitled to qualified immunity. (Doc. No. 65-2 at 8-9; Doc. No. 68 at 6). Defendants state that because "no reasonable correctional officer would know, beyond debate, that placing an inmate with Plaintiff's disciplinary history on C Status as directed by the prison rules would violate the First Amendment," they are immune from suit. (Doc. No. 65-2 at 2).

In opposition, Shepard argues his RVRs for refusing to accept his housing assignment and for battery on an inmate were not approved by the chief disciplinary officer until June 8, 2016. (Doc. No. 67 at 2). Shepard states that he was found guilty of the RVR for refusing housing on May 30, 2016, that the captain approved this finding on June 3, 2016, and that the chief disciplinary officer "finalized and concluded" the RVR on June 8, 2016. (*Id*. at 4). As to the RVR for battery on an inmate, Shepard states that he was found guilty at 11:07 a.m. on June 1, 2016, after the 9:00 a.m. UCC hearing at which he was placed on c-status. (*Id*. at 4). Further, Shepard points out this RVR was not approved until June 3, 2016 and not finalized until June 8, 2016. (*Id*.). Shepard also argues that Defendants' reliance on his RVR for cell phone possession was clearly improper because the incident occurred on August 31, 2015, well before the relevant

11

180-day period. (*Id*. at 5). Accordingly, Shepard argues he had only one "approved" RVR at the time of the June 1, 2016 UCC hearing, the RVR for participating in a riot (log no. 9931). (*Id*. at 3).

Shepard argues the only reason Defendants placed him on c-status was for being a legal beagle. Shepard also states that on April 6, 2016 Borum made a comment about a different civil rights complaint Shepard had filed saying, "I'm go [sic] get you, you should not have filed that complaint" and "here at Kern Valley we don't condone complaining." (Doc. No. 67 at 6, 18, 22). On July 19, 2016, when Acebedo interviewed Shepard regarding the retaliation, Shepard states he explained to Acebedo that Borum was retaliating against him for being a legal beagle. (Doc. No. 67 at 20, 93). Shepard claims Acebedo stated in reply, "How do you spell harassment?" and walked away laughing. (Doc. No. 67 at 24). Shepard also disputes that Defendants are entitled to qualified immunity because "both defendants knew exactly what they were doing." (*Id*.).

In their reply to Shepard's opposition, Defendants state that "Acebedo and Borum only agreed to place Plaintiff on C Status because they believed he qualified based on his disciplinary record" and not for any retaliatory reason. (Doc. No. 68 at 3).

### 3. Plaintiff is Not Entitled to Summary Judgment

The Court first considers the record in relation to Plaintiff's motion for summary judgment. The Court asks whether Shepard, the moving party, has met his initial burden of "proving the absence of a genuine issue of material fact" and showing *prima facie* entitlement to summary judgment on the issue of Shepard's First Amendment retaliation claim. *Celotex Corp.*, 477 U.S at 323. As set forth *supra*, Shepard must show five elements: protected conduct; an adverse action; that his protected conduct was a "substantial" or "motivating" factor behind the adverse action; a chilling effect; and no legitimate correctional goal in support of the action. *See Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

As to the first *Rhodes* factor, Shepard demonstrates he was engaged in protected conduct when he filed a prison grievance after being threatened with placement on c-status for his previous grievance writing. (*See* Doc. No. 66 at 33-42). Shepard also demonstrates the second element because he suffered an adverse action at the hands of a state actor—placement on c-status

for 151 days, despite being rescinded early. And the undersigned finds that this adverse action would chill a person of ordinary firmness from continuing to file prison grievances, meeting the fourth element. *See Rhodes*, 408 F.3d at 568.

However, Shepard fails to demonstrate as a matter of fact that the filing of prison grievances was a substantial or motivating factor behind his placement on c-status, the third factor. Shepard argues Defendants placed him on c-status in retaliation for being a legal beagle, *i.e.* a prisoner who files administrative grievances and civil rights lawsuits. Shepard's only evidence submitted in support of this claim are his own affidavits, which state that Defendants made statements which led Shepard to believe they were retaliating against him for engaging in protected activity. And, while it is undisputed that Shepard was placed on c-status six days after he lodged the May 24, 2016 grievance against Borum, the "mere speculation that defendants acted out of retaliation is not sufficient" to entitle Shepard to summary judgment. *See Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). Defendants submit their own affidavits in which they deny knowing Shepard had engaged in protected activity and claim they only placed Shepard on c-status based on their belief, albeit erroneous, that he had the requisite RVRs to warrant his placement on c-status. The undersigned finds the third *Rhodes* factor relies on material disputed facts and thus Shepard has failed to meet this factor.

Likewise, Shepard fails to show that Defendants' actions did not reasonably advance a legitimate correctional goal, the fifth *Rhodes* factor. Similarly, whether Defendants actions were taken to reasonably advance a legitimate correctional goal or were rather taken to retaliate against Shepard is a disputed question of fact. Shepard submits only his own affidavits to support his claim that Defendants knew they were retaliating against Shepard. However, "[m]ere conclusory allegations without more are insufficient to support a § 1983 claim or withstand summary judgment." *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1984). Shepard also argues that his disciplinary record did not support a c-status placement at the time of the June 1, 2016 classification committee hearing. In support, Shepard submits Defendants' interrogatory responses in which Defendants admit he was placed on c-status in error and the report from the September 22, 2016 hearing which also notes Shepard was placed on c-status in error. There is

no dispute between the parties that Shepard was placed on c-status in error. However, the parties dispute the underlying reasons for Shepard's placement on c-status. Accordingly, because this element relies on material disputed facts, Shepard has failed to meet this element. Because there are material issues of fact in dispute, the undersigned recommends that Shepard's motion for summary judgment be denied.

### 4. Defendants are Not Entitled to Summary Judgment

The Court now turns to the record and Defendants' motion for summary judgment. The Court again asks whether Defendants, the moving party, have met their initial burden of "proving the absence of a genuine issue of material fact" and showing *prima facie* entitlement to summary judgment on the issue of Shepard's First Amendment retaliation claim. *Celotex Corp.*, 477 U.S at 323. For the same reasons discussed *supra*, the undersigned finds materials facts in dispute that preclude a finding that Defendants are entitled to summary judgment as a matter of law.

As noted earlier, it is undisputed Shepard engaged in protected activity (writing a grievance about Borum's alleged statements) and he suffered an adverse action that would chill a person of ordinary firmness from filing future prison grievances and civil rights lawsuits. Defendants dispute that Shepard's protected conduct was a substantial or motivating factor behind the adverse action. In support Defendants submit their own affidavits denying that Shepard was called a "legal beagle" or that they knew of his protected conduct.[5] This element is a material fact disputed by the parties. Beyond their own affidavits, Defendants submit no other evidence to support their assertions. *See Ivey*, 673 F.2d at 268. Defendants also contend that Shepard's disciplinary record at the time of the June 1, 2016 hearing supported his placement on c-status. But Shepard submitted evidence showing that he was placed on c-status in error. And Defendants do not submit any evidence that they were aware of the other RVRs when they placed him on c-status. Indeed, the Classification Committee Chrono does not reference the other RVRs

---

[5] Defendants previously identified Shepard's grievances/appeals submitted in support of their previous exhaustion-based summary judgment motion. (Doc. No. 32-4). According to the documents submitted therein, Shepard submitted 25 grievances between 2013 and May 2016, while housed at KVSP. Shepard does not allege a causal connection between any specific earlier grievances and his claim of retaliation in this action. Instead, Shepard appears to claim Borum's alleged characterization of Shepard as a "legal beagle" was predicated upon his reputation for grievance writing.

14

to support their decision to place Shepard on c-status. Therefore, there are material disputes regarding the motivating factor behind Shepard's placement on c-status.

The Court need not addressing the fifth *Rhodes* factor having found a material fact in dispute. Nonetheless, the undersigned finds the fifth element fares no better. Defendants submit they placed Shepard on c-status to maintain prison order and safety, (Doc. No. 65-2 at 1, Doc. No. 68 at 5), and point to Shepard's disciplinary record and the regulation authorizing c-status placement for inmates with such a disciplinary record. (Doc. No. 65-2 at 6-7). As noted above, however, Shepard presents evidence showing he was placed on c-status in error. And, Defendants did not cite to these other RVRs when they placed Shepard on c-status. Therefore, whether Shepard was placed on c-status placement to reasonably advance a legitimate correctional goal is a material question of fact. Thus, the undesigned recommends Defendants' motion for summary judgment be denied.

In sum, based on the evidence submitted by the parties in connection with the pending motions, the undersigned concludes that neither party has established they are entitled to judgment in their favor as a matter of law and recommends that both motions for summary judgment be denied.

**5. Defendants Fail to Demonstrate Qualified Immunity**

In the alternative, Defendants argue that they are entitled to qualified immunity because "no reasonable correctional officer would know, beyond debate, that placing an inmate with Plaintiff's disciplinary history on C Status as directed by the prison rules would violate the First Amendment." (Doc. No. 65-2). In opposition, Shepard argues that Defendants are not entitled to qualified immunity because "both defendants knew exactly what they were doing." (Doc. No. 67 at 24).

Qualified immunity shields government officials from money damages unless their conduct violated "clearly established statutory or constitutional rights." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *accord Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018). To overcome the heavy burden of qualified immunity, Plaintiff must show that "(1) the official

violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent," as shown in "controlling authority or a robust consensus of cases of persuasive authority." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id*. at 590. The legal standard at issue must also have a high "degree of specificity." *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015). Courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S. Ct. at 590. A legal principle is too broad if the unlawfulness of an official's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Id*. (quoting *Anderson v. Creighton*, 483 U.S. 635, 640-41 (1987)).

Here, taking the facts in the light most favorable to Shepard, he has stated a claim for the violation of his First Amendment right to be free from retaliation for engaging in protected activity—the filing of prison grievances. *See Watison*, 668 F.3d at 1114. Second, the law at the time of the challenged conduct clearly established that retaliation in response to filing prison grievances was unlawful. *See Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir. 1995) ("The prohibition against retaliatory punishment [for filing prison grievances] is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes."). "The most fundamental of the constitutional protections that prisoners retain are the First Amendment rights to file prison grievances and to pursue civil rights litigation in the courts, for '[w]ithout those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices.'" *Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017) (quoting *Rhodes*, 408 F.3d at 567) ("[I]t was, of course, clearly established when [plaintiff] filed his grievances . . . that he had the 'constitutional right' to do that.).

Defendants argue that the law does not clearly establish "that every reasonable correctional officer would know, beyond debate, that a First Amendment violation would occur from placing an inmate" with Shepard's disciplinary record on c-status. (Doc. No. 65-2 at 9). Defendants argue that the California Code of Regulations, Title 15, Sections 3000 and 3044 dictated that they place Shepard on c-status. (*Id.*). Although it is true that the "existence of a statute or ordinance authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable officer would find that conduct constitutional," Shepard has presented evidence that Defendants placed him on c-status in error. This error occurred because prison officials determined Shepard's disciplinary record at the time of the June 1, 2016 hearing did not support his placement on c-status. As discussed above, triable issues of fact exist as to whether Defendants placed Shepard on c-status in retaliation for filing prison grievances. In the event Defendants did act out of retaliation when they placed Shepard on c-status, the right to be free from such retaliation is clearly established law. Accordingly, Defendants are not entitled to qualified immunity on Shepard's First Amendment retaliation claim.

Accordingly, it is **RECOMMENDED**:

1. Defendants' motion for summary judgment (Doc. No. 65) be **DENIED**.
2. Plaintiff's motion for summary judgment (Doc. No. 66) be **DENIED**.

## NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:  July 13, 2021

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE